IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Parks Superior Sales, Inc.,           :
                    Petitioner        :
                                      :
          v.                          :
                                      :
Bureau of Professional and            :
Occupational Affairs, State Board     :
of Motor Vehicle Manufacturers,       :
Dealers and Salespersons,             :  No. 914 C.D. 2016
                    Respondent        :  Argued:  December 12, 2016


BEFORE:    HONORABLE ROBERT SIMPSON, Judge
           HONORABLE JOSEPH M. COSGROVE, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE COSGROVE                    FILED:  October 20, 2017


          Parks Superior Sales, Inc. (Petitioner) petitions for review of the order
of the Pennsylvania Board of Motor Vehicle Manufacturers, Dealers and
Salespersons (Board) assessing Petitioner with a $55,000 fine and ordering it to
cease and desist from engaging in the business of a vehicle dealer in the
Commonwealth of Pennsylvania until Petitioner obtains a license to do so from the
Board.  For the following reasons, we reverse the order of the Board.

          Petitioner is a funeral coach dealer located in Somers, Connecticut and
has been selling funeral specialty vehicles since 1952.  Petitioner employed a single
salesperson, John O'Donnell, who worked out of his home in Collegeville,
Pennsylvania.  On behalf of Petitioner, Mr. O'Donnell sold fifteen vehicles to

consumers in Pennsylvania during 2012, twenty during 2011, and twenty during 2010. (Board's Order, 5/9/16, at 3-8.)

On February 18, 2015, the Commonwealth filed an order to show cause charging that Petitioner is subject to discipline under the Board of Vehicles Act[1] (Act) and Act 48[2] for engaging in the business of a vehicle dealer in Pennsylvania on at least fifty-five occasions without being licensed to do so by the Board. Petitioner filed an answer and new matter acknowledging it does not hold a license in Pennsylvania and that it sold vehicles to customers in Pennsylvania. Petitioner, however, denied it engaged in the *business* of vehicle dealing in the Commonwealth. (Board's Order at 3-5.)

A hearing on the matter was held on September 1, 2015. Neither Petitioner nor anyone representing Petitioner, appeared at the hearing.[3] Maria Kanoff, an investigator employed by the Department of State, Bureau of Enforcement Investigation, who conducted an investigation into the present matter, provided testimony on behalf of the Commonwealth. Ms. Kanoff explained that the vehicles sold were only specialty vehicles and that they were sold to trade shows and via the internet. She testified that Mr. O'Donnell did visit people in person, usually by request of the trade show. (Certified Record (R.R.), Item 8, Transcript of Testimony (T.T.) at 9-16.) Ms. Kanoff was further asked about the nature of the sales of vehicles in relation to Pennsylvania and Connecticut:

---

[1] Act of December 22, 1983 P.L. 306, No. 84, *as amended*, 63 P.S. §§ 818.1-818.37.

[2] Act of July 2, 1993 P.L. 345, No. 48, *as amended*, 63 P.S. §§ 2201-2207.

[3] Counsel for Petitioner has indicated that she did not receive notice of the September 1 hearing, and we have no reason to doubt this assertion.

2

Q: … But these people are selling vehicles ***into*** Pennsylvania, are -- where is the -- do you know [where] the paperwork is being done?

A: As -- the paperwork that was submitted to me -- I can't verify all the paperwork. But the paperwork that was submitted to me was based out of Connecticut.

T.T. at 16-17 (emphasis added).[4]

On May 9, 2016, the Board found Petitioner was a dealer of funeral specialty vehicles located in Somers, Connecticut, and did not hold a license as a vehicle dealer in Pennsylvania. Additionally, the Board found Petitioner engaged in the business of selling funeral specialty vehicles to Pennsylvania consumers. The Board found that, over the course of 2010 through the end of 2012, Petitioner's salesperson sold fifty-five vehicles to Pennsylvania customers also located in Pennsylvania in violation of Section 5(a)(1) of the Act.[5] As such, the Board assessed Petitioner with a $55,000.00 fine, $1,000.00 per vehicle sold while unlicensed, and ordered Petitioner to cease and desist from acting as a vehicle dealer within Pennsylvania until licensed to do so. The Board also assessed Petitioner with the costs of investigation in the amount of $923.16. (Board's Order at 10.)

On May 24, 2016, Petitioner filed a petition for a rehearing. Ultimately, the Board denied the petition as untimely. On August 4, 2016, this Court, while acknowledging the petition was untimely, granted Petitioner *nunc pro tunc* relief. Argument before a panel of this Court was held on December 12, 2016.

_____

[4] Reference was made at the hearing several times to Petitioner selling vehicles "***into*** Pennsylvania," (T.T. at 13.) (emphasis added). Ms. Kanoff stated repeatedly that while Petitioner admitted "sell[ing vehicles] to Pennsylvania residents," and to "consumers in Pennsylvania," (T.T. at 12,) Petitioner "didn't say they sell [the vehicles in Pennsylvania…]" *Id*.

[5] 63 P.S. § 818.5.

Accordingly, currently before us for review is the issue of whether or not Petitioner was doing business in Pennsylvania in violation of Section 5(a) of the Act.

## Discussion

Petitioner argues it did not violate Section 5(a) of the Act. Petitioner asserts it did not sell vehicles to customers or to the general public, rather, it sold vehicles to business purchasers with very specific needs. Further, it does the majority of its business via telephone, internet and trade shows and does not have a sales facility in Pennsylvania. Petitioner also argues the evidence does not show that any sale actually took place "within the Commonwealth." (Petitioner's Brief at 27-28.)

The Commonwealth points out that Petitioner utilized a Pennsylvania phone number to conduct business and finalized at least one sale of a vehicle to a Pennsylvania consumer from the office in Pennsylvania. The Commonwealth claims these activities fall squarely within the Act's definition of "buying, selling, and exchanging" for which a license is required. (Commonwealth's Brief at 18.)

Section 2 of the Act states, in pertinent part,

[t]o promote the public safety and welfare, it shall be unlawful for any person to engage in the business as a salesperson, dealer, branch lot, wholesale vehicle auction, public or retail vehicle auction, manufacturer, factory branch, distributor, distributor branch, factory representative or distributor representative within this Commonwealth unless the person has secured a license as required under this act.

63 P.S. § 818.5(a)(1).

4

Additionally, the Act defines a dealer as a person required to be licensed under this Act who is engaged in the business of buying, selling or exchanging new or used vehicles or an interest in new or used vehicles, regardless of whether the vehicles are owned by that person. 63 P.S. § 818.2.

Petitioner was a dealer because it sold new vehicles for compensation. However, the question remains as to whether Petitioner was engaged in the business as a vehicle dealer in Pennsylvania.

It is well settled that "the language of the statute must be read in a sense which harmonizes with the subject matter and its general purpose and object." *Kerbeck Cadillac Pontiac, Inc. v. State Board of Vehicle Manufacturers, Dealers & Salespersons*, 854 A.2d 663, 668 (Pa. Cmwlth. 2004). The Act states that its motivating purpose is "[t]o promote the public safety and welfare." 63 P.S. § 818.5(a)(1).

The vehicles Petitioner sold were not intended for use by the general public, but rather only for limited purposes within the funeral industry. Sales of the vehicles were infrequent and limited. Petitioner employed a single salesperson who resided in Pennsylvania and worked out of his home, with Petitioner's total amount of contact with Pennsylvania being quite tenuous. Indeed, the findings of fact made by the Board show that only fifty-five vehicles were sold to Pennsylvania customers over the course of three years, and all paperwork was completed in Connecticut. Mindful of these extremely unique circumstances and nature of the vehicles in question, we fail to see how imposing upon Petitioner a $55,000 penalty and requiring Petitioner to obtain a license harmonizes with the Act's purpose of promoting *public* safety and welfare. Rather, we find Petitioner activities in Pennsylvania were so insubstantial that they did not amount to a violation of the Act.

5

Moreover, reading the statute in a way proffered by the Board creates a dormant commerce clause issue which would best be avoided. The activities prohibited by the Act did not occur "within this Commonwealth" but instead in Connecticut: the transactions occurred in Connecticut; sales occurred in Connecticut; the vehicles themselves were assembled or modified in Connecticut. The United States Court of Appeals for the Fourth Circuit addressed a matter similar to that presently before this Court. In *Carolina Trucks & Equipment, Inc. v. Volvo Trucks of North America, Inc.*, 492 F.3d 484 (4th Cir. 2007), Carolina Trucks invoked state law which prohibited manufacturers from "own[ing], operat[ing], or control[ing] a new motor vehicle dealer[ship] in South Carolina … or … sell[ing] directly or indirectly, a motor vehicle to a consumer in [that] State," *id.* at 488 (internal citations omitted), and thus attempted to prevent Volvo Trucks (Volvo) from selling vehicles to consumers in South Carolina. While Volvo was not located in South Carolina, and there was no evidence that it actually consummated sales there, it did advertise in publications within that state. Carolina Trucks argued that "[a]lthough [Volvo] is physically located in Georgia, it entered South Carolina through direct mailings and phonebook advertisements." *Id.* at 490-491. Thus, "Carolina Trucks contended that the sales [of vehicles] took place partly on South Carolina soil" despite the fact that the culmination of transactions occurred outside that state. *Id.* at 490 (internal quotations omitted).

In finding against Carolina Trucks, the Fourth Circuit held that "a plaintiff cannot seek to apply one state's statute to transactions in another state through an expansive definition of the site of the regulated conduct. …[State statutes cannot be used to] seize upon a company's in-state commercial activities, such as the mailings and phone book advertising in this case, to regulate the companies' [sic]

6

out-of-state conduct [i.e. the sales of the vehicles in Georgia]." *Id.* at 491. To find otherwise, the Court noted, risked upsetting the delicate constitutional balance outlined in our "dormant commerce power" jurisprudence. *Id*. at 492.[6]

Petitioner's activity which may have occurred "within this Commonwealth," whether through advertising or direct discussion, was similar in nature to that found in *Carolina Trucks*, but it also differs in a number of respects. Because of our statutory holding, we need not decide whether the Board's action violates the Constitution, nor need we address Petitioner's other issues raised on appeal.

For the foregoing reasons we reverse the order of the Board.

_____
JOSEPH M. COSGROVE, Judge

---

[6] The Court also avoided an additional constitutional dilemma by interpreting the South Carolina statute in a fashion so as to prevent "giving the state's laws extraterritorial reach…" *Carolina Trucks,* 492 F.3d at 489.

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Parks Superior Sales, Inc., : 
                Petitioner : 
                 : 
         v. : 
                 : 
Bureau of Professional and : 
Occupational Affairs, State Board : 
of Motor Vehicle Manufacturers, : 
Dealers and Salespersons, :    No. 914 C.D. 2016
                Respondent : 

## O R D E R

AND NOW, this 20th day of October, 2017, the order of the Pennsylvania Board of Motor Vehicle Manufacturers, Dealers and Salespersons is reversed.

_____

JOSEPH M. COSGROVE, Judge